Ladies and gentlemen, please rise. This court is now in session. Please have a seat, gentlemen. Good afternoon. The clerk will call the case, please. 325-0167. Bradley O'Donnell, as trustee of the Bradley O'Donnell Trust, appellant by Lawrence Zarsky, v. Frank Fredrick, Fredrick Sr., Josephine A. Bradley, and Douglas Holmesby, appellate by Thomas Richardson. Lawrence Zarsky? Zarsky, yes. Thank you, Your Honor. You're welcome. May it please the Court. My name is Lawrence Zarsky, Z-D-A-R-S-K-Y. I'm here on behalf of the plaintiff appellant, Bradley O'Donnell, and the Bradley O'Donnell Trust. This is an appeal of right from a final judgment in the Circuit Court of DuPage County. The issues that revolve in this case basically involve the purchase of property at 6120 Park Avenue in Burr Ridge. My client purchased the property from the defendant trust. It was a two-acre parcel. He purchased a one-acre parcel, which had a home on it, and there was a vacant parcel to the north. The issues involving this case first began when there was an action brought to establish an easement by implication, both by necessity and by prior use, to utilize the vacant property to the north for access to the rear of the property that had a home on it. The home that was purchased from the Bradley Trust, the Bradleys had lived there themselves. It was their personal residence, although Frank Bradley Sr. was a developer and had built thousands of homes over the years. But they had constructed this home so that these two lots kind of worked together. There was a detention area for water in the rear of my client's lot from the north. So that's what started the mess. In the process of the case being pending, the parcel that was to the north was transferred to a third party, defendant Dunree. And my client then amended the complaint to bring in further counts for violation and breach of the right of first refusal. When the property was purchased in 2018, as part of the contract, it was negotiated that he would have a right of first refusal to purchase the vacant lot to the north. There were various stipulations and exemptions to that right of first refusal. When the property was transferred to the third party, it's our belief and our cause of action was that the right of first refusal was triggered. What you're saying is that the exemptions in that right of first refusal, which would make it non-binding on certain transactions, correct?  And so how does this transaction that took place violate, or is it an exemption? If we look at the right of first refusal, which is attached to the complaint, and it's actually in the appendix in pages 132 to 135, the right of first refusal is triggered so long as Lot 1 remained vacant and unapproved, which at the time of the transfer from the Bradley Trust to Dunree, the third party, it would still remain vacant and unapproved. And it says that the seller either receives a bona fide offer in writing by a willing third party to purchase, and the seller intends to accept that offer, or if some purchase agreement which the seller intends to enter into. I couldn't understand that last thing you said. What was that? Either a bona fide written offer, or any other purchase agreement that the seller intended to enter into. That would trigger the right of first refusal. There are exempt transactions, very specific within the right of first refusal, where it will not arise. That being, if it's a transfer to a trust, an LLC, or a partnership that is owned solely by either Josephine or Frank Bradley Sr., which is not the case here. It was transferred to a corporation, which is a third party entity. Or it was a 1031 exchange. It's clear from the record that it was not a 1031 exchange. Or if it was a gift or a donation, and it's clear from the record that it was not, based upon the deposition of Frank Bradley Jr., the president of Dunree, this was a contract for purchase for consideration. So those exemptions do not apply. Okay. And Mr. Bradley, your client, is what, a brother? No, Bradley O'Donnell. Okay. I don't want to confuse the first names and the last names. My client is Bradley O'Donnell, who is unrelated to the Bradleys who own the property. The Sr. and the Bradley Trust owned the property, and my client purchased their home from them, as well as the right of first refusal for that. Frank Bradley Jr. is an owner of a third party entity, Dunree Homes, that was transferred the property. So there's no exemption between blood relatives? Correct. Okay. The exemptions do not apply. Obviously, the property was transferred, so the right of first refusal was clearly triggered. The issue that we have here on appeal is as follows. The trial court below indicated that because there was no set purchase price on the transaction between the Bradleys, between the Bradley Trust and Dunree, because there was no purchase price, said it would not be considered an offer, and it would not trigger it. But it was obviously a contract for consideration, and the bottom line is, is just because there was no purchase price, we do not have a situation, no purchase price stated. We do not have a situation that does not trigger the right. It does not fit one of the exemptions. Had the, for instance, had Bradley Sr. wanted, and Josephine with the Trust, had they wanted this particular transaction to occur, they could have offered that as part of the negotiated deal. I mean, clearly the only, it's uncontroverted. My client, who submitted affidavits for both the motions to dismiss as well as the motion for summary judgment, indicated what the intent of the right of first refusal was. He didn't want a spec, he didn't want to happen exactly what happened here. A spec home by a third-party developer. Bradley Sr. indicated that the reason that they would have wanted a right of first refusal and put those He was okay with a spec home by Sr. Well, if that wouldn't have been a spec home. If Sr. would have made a spec home and sold it at some later date, that would have been perfectly fine. But the stated purpose was, hey, if my kids might want to buy this, my kids might want to build a home, I might want to build a home for myself, because he just sold their residence to Mr. O'Donnell. So that was considered and clearly stated in the record. Let me ask you this. Sr. and his wife, they could have decided to develop it and chose any contractor they wanted to. Certainly. And they happened to choose their son. Well, they didn't happen to choose their son. But what I'm saying is, if they had just said, we're going to develop this, and I want ABC builders to do it, they could have done that. But instead they used their son, the bank asked them, listen, this will be a lot easier if we do it this way. But that does trigger the right of refusal, versus if they just hired somebody else? Judge, I don't know why they did it this way. That's his son. They built thousands of homes. He could have built it himself and sold it. My client lives in a house built by Frank Bradley Sr. So he probably figured when he entered into this right of refusal that if Frank Bradley Sr. built the house, it would be a decent house. It would be like if I were to say, if I were to purchase from Justice Holdren, if I were to say, I like your home, and you've got a nice vacant lot next door, and I'm going to buy your home, you decide to sell it to me. I said, yeah, but I don't want a neighbor next door to me necessarily. I might want to keep that lot vacant because they're kind of a twin lot. But then all of a sudden, Justice Peterson, who is a colleague of you, decided, this whispers in your ear, don't offer this right of first refusal to the guy who bargained for it and paid for it, but just I'll give you $350,000 for this lot. But we just can't say that that's the offer. I'll transfer you the property. You go get yourself. I'll transfer you the property. You go get yourself a loan and build on it. And when it's all said and done and I sell it, I'll give you your end. There's no way that you can look at this where the defendants have clean hands. It's either collusion to breach the contract, to breach the right of first refusal, to stop my client from having the ability to meet that offer, or it's outright fraud. It's one of the two. There's no legitimate way to do it because, as Justice Peterson has indicated, if this was a, the seller, the trust, could have done this themselves. Counselor, you indicated that it would be okay for seniors who have engaged, dirty, let's forget about his son owning the company, just a contractor to build a home, correct? Sure. And was there any restriction as to how he was going to pay that contractor to build the home? No. So why can't he just tell the contractor, when this home is built, we'll split the profits? You tell me how much it costs you to build it. I could have done that. I could have done a million different things. As long as he didn't transfer it. As long as he didn't transfer the property. So that is the difference. You can't transfer the property to a third party. It's like they tried to argue throughout these proceedings, oh, this is all the same. But the contract means nothing. Now, they used to tell me back in Moot Court in 45 years. Isn't the contract for a, there's two provisions which make the contract. A bona fide written offer. Didn't have that here, right? Or a purchase agreement which seller intends to enter into. We don't have that here either? Yeah, we do. Judge Chapman, Judge Chapman. That's explicit though, right? Judge Chapman laid it out. Laid out the terminology as to what that, as to what that, exactly what the contract was. He says, the undisputed facts are that the land was transferred from defendant to gunnery for the purpose of obtaining a construction loan to construct the house with the two entities ultimately dividing the profits. Even based upon that simple statement and agreement that Judge Chapman found, it triggers it. The fact that there, the case law stated by the underlying trial court, the Kellner case, does not stand for what the judge said it did. He said there's no stated purchase price, therefore it wasn't triggered. It triggers it because you're saying it's a purchase agreement. That's a purchase agreement. That's a purchase agreement. We agree that we're going to split the profits of my labor and your ownership. That's a purchase agreement. This is a purchase agreement because even though there's no specific, and Kellner, the Kellner case and all its progeny, which was laid out in our brief, have indicated as long as there's a mode to ascertain eventually what all the terms of the agreement are. You don't need to have a purchase price. They have built into this little agreement, even as simple as the judge found, that there was an agreement to do. It's built within that. Mike Heim would have done the same thing. He would have been happy. He wouldn't have needed to get a loan. He would have been happy for them to transfer him the property. He'll build it, and then I'll pay you when we end up settling it. How would your client have its easement? Wouldn't need an easement at that point. He was going to develop a house and have it just like Frank Sr. and Jr. did. But the whole point would be I'm talking not the easement portion. I'm saying with respect to the purchase, with respect to the right of first refusal, there was a mode to ascertain what the deal was. There was an agreement. You get the property. Now, why Frank Sr. didn't go out and get a loan himself, I don't know. Why Frank Jr., who was also a developer, needed to get a loan, I don't know. Why they had to transfer the property before all that was done, I don't know. There were many different ways for them to circumvent and avoid the right of first refusal. The point is they didn't, and the right of first refusal is very clear. They tried throughout these proceedings to say, oh, well, we improved it already. We had a thought in our mind that we were going to improve this lot, and we tried to get a permit. The case law indicates, as we've indicated in our briefs, that's not improvement. Frank Jr. himself said they didn't begin improvements after the transfer. You can't retroactively, because the termination clause, Paragraph 6 of the agreement says, if it's been approved by somebody or if my client, Mr. O'Donnell, sold this place, then it's terminated. They tried to say, well, it's terminated because we started an improvement, but you did that after you transferred it. You can't retroactively terminate the agreement prior to the transfer when you didn't start improving it to over a month and a half after you did the transfer. The specific language of the right of first refusal, they drafted it. It's there. It's right in front of us. It's clear. It's unambiguous. Throughout these proceedings, including in their briefs, they try to say, oh, redefine and expand the use of the word improvement, redefine family member and affiliate. Dunree is not an affiliate. Dunree is not a family member. It's well-established law in Illinois that a contractor is, I mean, a third-party contract corporation is an individual. So I don't care who owns that third-party contract. They could have done it the right way. The fact is, they didn't. And I don't think it's for the courts to turn around and say, well, the end justifies the means. They could circumvent the right of first refusal, and the end result is, well, it got improved anyway, and it's a family member. So let's pretend like the right of first refusal isn't an issue. What we have to do is we have to argue, not argue, we have to show that what my clients bargained for, you know, and paid for, they should have been able to receive. Counsel, your time is up, but you will have five minutes on rebuttal. I have five minutes on rebuttal for anything that you have to ask me on the easement issue or if there's no other questions on this presentation. I don't know why that's making noise. Oh. Oh, your timing was impeccable because it was the same as the rebuttal. Oh, is it? Justice, do you have anything else? No, I do not. I'll save mine for your rebuttal argument, then. Justice? No. Thank you, Your Honor. You'll have two out of five minutes. Mr. Christensen? Yes, sir. I thought our light was speaking to us. Good afternoon, and may it please the Court.  And for the record, my name is Tom Christensen. I represent the Appellees, Josephine and Frank Bradley, as trustees in Dunry Homes. I'm glad that counsel finished with talking about enforcing the contract and the right of first refusal exactly as it's written. Because as long as we do that, we will see that the right of first refusal was never triggered in the first place. And until it's triggered, none of the exceptions apply, and the termination does not apply. We'll talk about the termination shortly. But let's read the triggering paragraph. For so long as the property remains vacant and unimproved, if seller receives either a bona fide written offer, didn't happen, by a willing third party, the conveyance happened to an entity owned by the son. Counsel, that's still a third party, though, right? Okay. Let's stipulate. I mean, we can't try to put – that's this whole argument. Let's not make it about being the son. Well, I think the termination – you have to read this contract as a whole, and I'll come back to it. Let's go back to the first and listen to those words you're trying to tell us here. The first one is a bona fide written offer. Right. And then move into the next one. The next is, which the seller intends to accept, or a purchase agreement, which seller intends to enter into. Purchase agreement. Those are defined collectively as offer. As what? As an offer, the capital O. Was there one here? I'm sorry? Was there one here? No. Okay. And then it says that if either of those happen, the seller has to give written notice accompanied by a copy of such offer, with a capital O, which is – which offer is defined to include both an offer by a third party or a purchase agreement. What do we know from that? We know it has to be in writing. If you're going to give a copy to Mr. O'Donnell, it must be in writing. Okay? Because it says you're going to send him a written copy. None of those things happen. None of those things happen. The O'Donnells, Mr. O'Donnell, could have negotiated, as long as counsel was talking about how we could have negotiated this, he could have said any conveyance, any conveyance at all to anyone will trigger the right of first refusal. Okay? If you plan to convey it, I have a right of first refusal, and under the loosened up case law that happens, that we've seen, that don't require as much specificity in the right of first refusal, he could have simply said, well, then we'll go get it appraised, and I get to buy it at the appraised value. There's all kinds of ways that Mr. O'Donnell could have negotiated to have this contract written, such that his right of first refusal would have been triggered by a mere conveyance. The suggestion that there was any – we know there was no written offer, so we're down to was there a purchase agreement. The suggestion that there was any meeting of the minds between the son's company and the father is, with respect to the terms of a purchase agreement, before the time that the property was conveyed, is totally devoid of support in the record. There's nothing like that. I mean, the deposition testimony of Mr. Bradley is all that they hang their hat on, and that's a vague concept that at some point in time, there's no discussion of how we're going to divide the proceeds or anything else. We'll sit down, and we'll figure out what we want to do. This is, again, and this is where Justice Helley, I recognize that the specific terms of the contract, and that's where I feel like you have to read it as a whole because the termination provision, we're either going to enforce this contract to the letter or we're not. And if we're going to enforce it to the letter, then it was never triggered because it's undisputed. There's no written offer. There's no written purchase agreement. There's no copy of a purchase agreement for – Now, let's go back to the right of first refusal. Was there a – was it required to be a written purchase agreement? Yes, it is. And we know that – So the word written is in there. No, it's not. You're inferring written. Because you have to deliver a copy of it. That's right. How do you deliver a copy of it if it's not in writing? Well, I know, but that's a step of inference. And it's a logical step. Okay. But let's kind of parse this out. That's fair. It doesn't – I agree with Your Honor. There's no specific reference to a written – We lawyers write words that have meanings, and we admit words. Well, maybe they should have had the word. I think that you have to read the even paragraph 2 cohesively. And if there's not – if the purchase agreement is not in writing, then how will I ever deliver a copy to the recipient of the right of first refusal? So I think I agree with Your Honor. It is somewhat of an inference. It is a very, very minor inference, and I think it follows. Your argument, though, is one of those two things have to happen. Absolutely. Have to be present, factually found. Absolutely. And if we're going to enforce the agreement to the letter, if we're not going to enforce it to the letter, then let's look at paragraph 6. Why wouldn't you? Because I don't think counsel wants to. Counsel said it's either – what he said was it must be fraud or collusion that they did to get around the specific terms of the agreement. That's tantamount to admitting that he doesn't really have it under the agreement because neither of those happened. So he said, well, it must be fraud or collusion that they used to evade the agreement. But I still want to enforce the agreement to the letter. I don't want to enforce the agreement to the letter. I'm just saying because there was fraud or collusion, that's why the specific triggering event didn't happen. So let's say, okay, we won't enforce it to the letter. Now let's look at paragraph 6. Termination. The improvement of the property by seller, seller's affiliates, or any member of seller's immediate family. Okay. This was improved by a company owned by the seller's son. And my opponent says, so that's not a member of his immediate family. It's an entity. It's not a member of his immediate family. That's fine. In order to get there, he must enforce the agreement to the letter. And, again, we're going to either do that or not. If we're going to enforce it to the letter, then the triggering event never happened. If we're not going to, then let's not pay attention to the fiction between a 100% owned LLC that purchased the property and a member of the seller's immediate family. And, furthermore, I think when you read it as a whole, paragraph 6 informs paragraph 2. Because what are these people trying to do? What they're saying is if it's developed by a member of your immediate family, if it's kept inside the family, then I'm not worried about it. That terminates it. And it just so happens that it was done by an entity rather than the son himself. So, fine. Let's say that paragraph 6 didn't kick in to terminate it. But you can't read paragraph 1, or paragraph 2, as saying that even an informal conveyance with no formal offer, no purchase order, no terms. This is what Judge Chapman found was, I don't know what the terms of this, if there's a purchase contract, what are the terms? There aren't any. It was just a conveyance with, under the testimony, the deposition testimony of Frank Jr., some potential to later divide the profits. There was no purchase price agreed to. There were no financing terms agreed to. There was no closing date set. I mean, in fact, if you read the end of paragraph 2, you have to provide it at least 45 days before the date of the contemplated sale. There was no contemplated sale. None of these things happened. None of these things happened, such as to trigger the right of first refusal. So, again, my comments about the other provisions, you don't have to ignore the distinction between Dunwee Holmes and Frank Jr. in order to get to the fact that the clear intent of this right of first refusal was to, as long as it stays in the family, and if there's an informal transfer among family members, that's not going to trigger it. Again, he could have written it very easily to say that. Counsel, is there evidence in the record as to who initiated this thought, this idea of developing senior or junior? It's not in the record, Your Honor. It's not. I believe those are all of my comments on the right of first refusal. Counsel didn't get to speak about the easement, but I can speak briefly about it. The easement issue. Which was not pled in the fourth and fifth complaint. Well, I mean, I believe that the answer is it was waived. I think that that's an issue. It was not pled in the fourth and fifth complaint. And it wasn't preserved. So that is an issue. But even absent that, an easement by necessity only occurs if it's landlocked. This is not landlocked property. He can come and go from his property as he wishes. For purposes of an easement by prior use, we look at the issue of reasonable beneficial enjoyment of the property. And the plaintiff seems to argue that being able to have commercial landscaping equipment right into the backyard of a residential property without disturbing surrounding landscaping is a reasonable, beneficial use of the property. We say that's not supported by any of the case law. He admitted an oral argument that a regular lawn mower can get back to the backyard. Certainly they can go back to the backyard and have cookouts and do whatever they want in the backyard. It's just a matter of equipment that they say they need to be able to get to the backyard. They can do that by either a normal lawn mower that he admitted, an oral argument, can get brought into the backyard, or by moving landscaping and shrubs and things of that nature. Most of the cases that we look at have some kind of a permanent impediment that blocks the easement. This is landscaping that is on the plaintiff's own property that he claims he can't get around the landscaping in order to get to the backyard with his large lawn mowers, but that's his own impediment. That's not an impediment that's placed there by the defendant. So we argue to the court that there's no easement by prior use because there's no significant impingement on the beneficial use and enjoyment of the property. They can use it for whatever they want, and they can find ways to mow the lawn in their backyard that have nothing to do with any impediment placed by the defendant. I'm trying to picture this. There's a berm going in back of both of those lots? I think that's correct. Which is a drainage concept. Right. But on that side, they can get through with a small lawn mower. It's on the other side, as I understand it, that there's some landscaping, which they say prevents them from getting, again, a full-size commercial lawn mower into the backyard. And the answer to that, again, we're not talking about an absolute right to an easement. We're talking about whether there's an unreasonable infringement on their beneficial enjoyment and use of the property. They can get back there to do all kinds of things. All they can't get back there to do, they claim, is mow the lawn with a large commercial lawn mower. And so their options are either use a regular lawn mower or move some of your landscaping elements that are on your own property. And they never came in with any evidence about what kind of burden would be, what they'd have to do or what the burden would be in order to do that. But I've never seen a case where the actual impediment is on the property of the party claiming the easement in the first place and all they have to do. That's a movable impediment. That's not a garage. It's not part of the house. It's not an outbuilding. It's landscaping elements that can easily be changed or moved if that's what they need to do in order to get a large lawn mower to the back. Any other questions? I have no questions. Thank you, Counsel. Thank you, Your Honors. Thank you, Counsel. Thank you, Your Honors. Before I move on to the easement issue briefly, the triggering effect here, there's nothing that says it has to be a written, the purchase agreement has to be written. Why would you put two duplicitous things? The first thing says if a seller receives a bona fide written offer by a willing third party, why would you need the second portion of that? Or a purchase agreement which the seller intends to enter into. You wouldn't need that second sentence if you're requiring a written purchase offer. The first sentence would have been perfectly fine. So the concept that this useless second sentence only refers back to the first doesn't make any sense. If you either have a written contract or you have a purchase agreement, it's obvious there was a purchase agreement because they transferred the property. Beyond the transfer, what other evidence is there that there was a purchase agreement? Deposition testimony. Deposition testimony of Mr. Bradley, Jr., who said, of course my parents took this into consideration. Of course I'm purchasing this from them. It wasn't a gift. It wasn't a 1031 exchange. Of course I'm going to pay them money once we end up selling the house. Oh, we'll work it out. What they basically are saying is that all you have to do to circumvent something is go and whisper in somebody's ear what you're going to eventually pay them and say, ah, no offer. Didn't he simply state that they would figure it out, father and son would figure it out in the end as to what the consequences  He transferred the property. He said, dad and mom expected to be paid. There was an agreement. And when we got a loan and when we sell this property, we will make sure that they get taken care of. We don't know. We don't know what that, but my client would have, all we have to do is show on the same terms and conditions. We would have purchased the property on the same terms and conditions. Mr. Christensen expressed that the record does not support an answer to my question about was it senior's idea or junior's idea. Do you disagree with that? The record doesn't indicate whose idea it was. The only thing we can only surmise, you know, why the property was transferred. Just a quick question. Is your client on a construction company? Does he build houses for a living? No, but he could have been a project manager in general on that just as easily as Dunree could have been. Hold on. Can you cite the case? The chart board writes a first refusal are not indefinite or unenforceable without a stated purchase price. So long as the holder meets the material terms and conditions of the third party's offer. So you see there's a difference where Frank Senior, who knows, he's got a company. He's aware of that company's ability. He's aware of that company, what they could do. And there's middle men that are out of the picture that save money. And you're saying you would go then, your client could then go hire anybody he wanted and that meets the same terms as him, as his dad worked out or his son. How could that be the same? Doesn't it seem almost impossible? No, it doesn't seem almost impossible. Hell, my client could have hired Dunree to build it. They could have discussed that. They could have, you know, the bottom line is, the bottom line is they could have done the same thing that Dunree did. And frankly, Frank Senior, you know, Frank Senior was going to get his money regardless of what profit either Dunree or my client would have gotten. Well, that becomes another issue. Why are we talking about development? Maybe the person wants to leave a strong living room. My client would have purchased it on the terms and he wants to leave it vacant. So my client would have offered the same thing to Frank Senior and said, we'll take it, whatever you're expecting to get from Frank Junior, we'll pay you that money and we're going to keep it vacant. Briefly, I need to just go to the other side. The dismissal, the 2-615 dismissal of the easement counts, with respect to count two, was in the second amendment complaint. Those were preserved. They didn't become filing unappealable until the entire matter, with all the parties. So there was no waiver. Even though you didn't replete them? We could replete them. They were dismissed with prejudice. We didn't have to replete them. They were dismissed with prejudice, but pursuant to Supreme Court rules, they became appealable. They were final orders, but did not become appealable until the matter was done. And the bottom line is, Your Honor, if I could, there was substantial facts in the record, substantial showing of prior use, substantial showing of necessity. They bargained for this landscaping and these bricks and this landscaping material with the use of that as an easement. It's kind of ridiculous to say now, well, they own it now so they can modify it. Well, they bargained for the property as it was sold to them. And as it was sold to them, there is a necessity and there was prior use. And it was substantially clear. I ask that you review the Second Amendment complaint. It was substantially clear. And this was a 2-615 motion, which should not have been granted on that basis because you have to show that no set of facts would have allowed the establishment of those things. Thank you, counsel. Any further questions? No. Thank you very much, Your Honor. I appreciate your time today. Gentlemen, have a good day. Thank you. We will take this matter under advisement and issue a written opinion in due course. Thank you. Thank you, Judge.